UNITED STATES DISTRICT COURT

Northern District of California

San Francisco Division

| | |
|---|---|
| NORMA J. WINGATE,<br><br>          Plaintiff,<br>     v.<br><br>PATRICK DONAHOE, POSTMASTER GENERAL OF THE UNITED STATES,<br><br>          Defendant.<br>_____/ | No. C 12-05560 LB<br>No. C 13-01722 LB<br><br>**ORDER GRANTING MOTIONS TO DISMISS** |

## INTRODUCTION

The order addresses motions to dismiss the amended complaints in two related actions filed by *pro se* Plaintiff Norma J. Wingate, a former United States Postal Service ("USPS") employee, against Patrick Donahoe, Postmaster General of the United States,[1] for employment discrimination based on her race, national origin, sex, and color, and for a hostile work environment. In both Case No. 12-05560 LB ("*Wingate I*"), and Case No. 13-01722 LB ("*Wingate II*"), Ms. Wingate seeks declaratory and injunctive relief, lost compensation, compensatory damages, attorney's fees, and costs. *See Wingate I*, First Amended Complaint ("FAC"), ECF No. 26; *Wingate II*, FAC, ECF No.

---

[1] For purposes of this order, the court need not distinguish between Postmaster Donahoe and the USPS and refers to the Defendant as "USPS."

15.[2] On August 28, 2013, the USPS moved to dismiss all of Ms. Wingate's claims in both cases. *See Wingate I*, Motion, ECF No. 19; *Wingate II*, Motion, ECF No. 16. For the reasons discussed below, the court **GRANTS** the USPS's motions to dismiss **WITH PREJUDICE**.[3]

## STATEMENT[4]

### I. FACTUAL ALLEGATIONS & PROCEDURAL HISTORIES

#### A. *Wingate I*

##### 1. *EEO Proceedings in Wingate I*[5]

On December 24, 2009, Ms. Wingate filed a formal EEO Complaint of Discrimination with the USPS's Equal Employment Opportunity ("EEO") office. *Id.* ¶ 2; *see* Tam Decl. Ex. A, ECF No. 26-2. She alleged that "Manager Sharon Gray and USPS" discriminated against her "based on Race (African-American), Color (Black), Sex (Female), National Origin (Unspecified), Age (DOB: 3/3/39), Mental Disability (Stress) and Retaliation (Prior EEO Activity)." *Id.* at 9 (letter restating Ms. Wingate's allegations); *see id.*[6]

Ms. Wingate's EEO complaint alleged that she was off work from August 26 to September 14, 2009, due to "Harassment and a Hostile Work environment on Job Stress." *Id.* at 3, 9. On

---

[2] Citations are to the Electronic Case File ("ECF") with pin cites to the electronically-generated page number at the top of the document.

[3] Pursuant to N.D. Cal. Civil Local Rule 7-6, the court finds this matter suitable for determination without oral argument and vacates the October 3, 2013 hearing in this matter.

[4] The factual allegations and procedural history below are taken from Ms. Wingate's First Amended Complaints. The court also considers the documents attached to the Tam Declaration in *Wingate I*, ECF No. 26, and the Desorbo Declaration in *Wingate II*, ECF No. 16-1, because the USPS's motions to dismiss challenge the factual bases for jurisdiction and because Ms. Wingate has not objected to this evidence. *See generally*, Opp'n, ECF No. 28; *see also infra* at 8-9.

[5] The court's previous order dismissing all of the claims in Ms. Wingate's original complaints recounted in detail the history of Ms. Wingate's EEO proceedings. *See Wingate I*, Order, ECF No. 23 at 1-5; *Wingate II*, Order, ECF No. 13 at 1-3. The court incorporates those discussions by reference and summarizes them below.

[6] Ms. Wingate's amended complaint does not allege discrimination based on age, disability, or retaliation. *See generally* FAC. Accordingly, the court finds that Ms. Wingate has abandoned these claims.

September 16, 2009, Sharon Gray gave Ms. Wingate a new job assignment, but Ms. Wingate refused to accept the change. *Id.* at 5.  Gray then told Ms. Wingate not to return to work and placed her in a "no pay status (LWOP)" for her August 26 to September 14, 2009 absence and from September 16, 2009 forward. *Id.* at 5, 9.

The USPS ruled that Ms. Wingate failed to establish that she was subject to discrimination or retaliation, and she appealed the decision to the Merit Systems Protection Board. *See* Compl. ¶¶ 3-4; Tam Decl. Ex. B.  She later filed a second appeal challenging her removal from the Postal Service. *See* Compl. ¶ 6; Tam Decl. Ex. D.  The appeals were joined and addressed at a hearing on May 16-17, 2011.  *See id.*  The MSPB ruled in Ms. Wingate's favor on the removal issue, ordered the USPS to reinstate her, and awarded back pay.  *See id.*; Tam Decl. Ex. E.  The MSPB also held (both initially and upon review) that Ms. Wingate failed to establish any evidence of discrimination or retaliation.  Tam Decl. Exs. D-E.

### *2. Wingate I in Federal Court*

On October 30, 2012, Ms. Wingate filed suit in this court. *See* Complaint, ECF No. 1.  Her original complaint alleged that the USPS discriminated against her in violation of Title VII with respect to her race or color, sex, and national origin. *See* Complaint ¶¶ 3-5.  She explained that the discrimination claims were an appeal of the MSPB decision against her. *See* Compl., ECF No. 1-3 at 1.  In addition, Ms. Wingate alleged that the USPS failed to comply with the MSPB decision ordering her reinstatement, and she sought to enforce that order. *See id.*, ECF No. 1-1 at 1-2.  These "petition for enforcement" allegations were that the USPS improperly deducted and withheld funds from her back pay award, interfered with the delivery of her award checks, denied her bonuses, and refused to correct her attendance records. *See* Order, ECF No. 23 at 4.  Ms. Wingate also made cursory allegations referencing claims including fraud, extortion, invasion of privacy, conspiracy, extortion, stalking and Fourteenth Amendment and due process violations. *Id., passim*; Order, ECF No. 23 at 4-5.

On July 23, 2013, the court dismissed all of Ms. Wingate's claims. *See id.* at 15.  The court dismissed with prejudice Ms. Wingate's tort claims based on defamation, extortion, fraud, and invasion of privacy because they were barred by the doctrine of sovereign immunity. *Id.*  The court

dismissed the remaining claims without prejudice. *Id.* With respect to any tort claims that fell within an exception to sovereign immunity, Ms. Wingate failed to exhaust the administrative remedies required by the Federal Tort Claims Act. *Id.* at 13.

The court also dismissed for lack of jurisdiction any Title VII claims based on allegations that were not presented to the MSPB, including claims that the USPS or its employees harassed Ms. Wingate, discriminated against her, or retaliated against her after the MSPB ruling. *Id.* at 10.

With regard to the discrimination claims that were presented to the MSPB, the court found that Ms. Wingate failed to allege any facts showing that similarly-situated individuals outside her protected class were treated more favorably. *Id.* at 11 (race, sex, and national origin discrimination), 12 (age discrimination under the ADEA); 13 (harassment, hostile work environment, and retaliation claims).

### 3. Allegations in *Wingate I FAC*

Ms. Wingate filed her First Amended Complaint on August 28, 2013. *See* FAC, ECF No. 25. In it, Ms. Wingate alleges that she is an "Afro-American (Black)" female, a United States citizen, and a resident of San Francisco County. *See* FAC, ¶ 11. Defendant Patrick Donahoe is the Postmaster General of the United States and an employer within the meaning of Title VII. *Id.* ¶ 13.

On August 13, 2009, Sharon Gray, the manager of the Bayview Station post office, asked Ms. Wingate if she wanted "to replace her as the Bayview Station Manager." *Id.* ¶ 14. Ms. Wingate asked Gray if someone would then be hired to take Ms. Wingate's place as Delivery Service (letter carrier) Supervisor, if she accepted this new position. *Id.* ¶ 15. Gray responded that no one would replace Ms. Wingate and that she would be covering both positions. *See id.* Gray said that Ms. Wingate could ask either Gray's supervisor or the Postmaster for a replacement Delivery Service Supervisor, though that did not follow the proper chain of command. *See id.*

According to Ms. Wingate, USPS employees were not asked to cover both of these positions at the same time and none of the other Bayview replacement managers were asked to cover both supervisor and manager positions at the same time. *Id.* None of the replacement managers were African-American or Black. *Id.* ¶ 17.

During a previous three-week period, Ms. Wingate had covered both positions at the same time.

*See id.* ¶¶ 18-19. Because the Acting Manager and Delivery Service Supervisor jobs had different schedules, Ms. Wingate had been required to work 12-hour days during this period. *See id.* ¶ 18. Because she was not approved to work such long hours, though, she was not paid for all of the time she worked. *Id.*

Accordingly, Plaintiff said that she would rather not cover both positions and declined to take over Gray's position unless USPS provided a replacement Delivery Service Supervisor. *See id.* ¶ 19. Instead, the manager positions was given to Anthony Jarmon, who had previously worked at the Airport Finance Station. *Id.* ¶ 20.

Jarmon did not show up for work on August 20, 2009 and did not return until September 16. *Id.* ¶ 21. With Jarmon and Gray out, Ms. Wingate had to cover for the manager and also fill three supervisor positions until the next week when Gray returned from vacation. *Id.* ¶¶ 21-24.[7]

Ms. Wingate also alleges that she received a letter stating that she would be put on leave without pay ("LWOP") until notified to return to work. *Id.* ¶ 25. The letter stated that after 14 days, she would be put on administrative leave. *Id.* Instead, Ms. Wingate was "carried on LWOP and AWOL" for two years. *Id.* She also was denied use of her leave for seven months and was refused paid leave on "numerous occasions." *See id.* ¶¶ 26; 29.

Ms. Wingate also alleges that Gray had acting manager Dayao falsify Ms. Wingate's attendance record so that she would be issued a letter of removal for being absent without leave. *Id.* ¶ 27. Gray and Manager Orozco-Boldware "[c]onspired to have Acting Postmaster Hartenstein issue the falsified Letter of Removal." *Id.*

The FAC also alleges that at some point, Ms. Wingate had been out on sick leave. *Id.* ¶ 28. When she returned, two managers conspired to reassign her from the Embarcadero Postal Center to a relief position at three different stations. *Id.* The relief position was at stations that were considered less desirable. *Id.*

Finally, Ms. Wingate alleges, on information and belief, that "persons who are not of her

---

[7] The FAC does not explain why Ms. Wingate had to cover four (rather than two) supervisor positions.

particular persuasions have not received such treatment." *Id.* ¶ 30.

## B. *Wingate II*

### 1. *EEO Proceedings Related to Wingate II*

On September 7, 2012, Ms. Wingate filed the EEO complaint underlying *Wingate II* with the USPS's EEO office. *See* Desorbo Decl. Ex. A, ECF No. 16-2. She alleged that she had been discriminated against on the basis of her race, national origin, sex, and age, and subjected to retaliation based on her prior EEO activity. *See* FAC, ECF No. 15; Desorbo Decl. Ex. A. Ms. Wingate later added additional allegations of discrimination based on the USPS allegedly forcing her to retire. FAC ¶ 4. The alleged discrimination occurred when:

(1) USPS denied Ms. Wingate's requests for leave on unspecified dates over the previous three years;

(2) Manager Sharon Gray invaded Ms. Wingate's privacy by opening, delaying, and intercepting Ms. Wingate's mail and sharing the information with others;

(3) her manager signed a form obligating Ms. Wingate to pay for health and life insurance during a period when she had been on leave without pay status;

(4) the USPS denied Ms. Wingate's August 17, 2012 request for information;

(5) Ms. Wingate was incorrectly rated on her 2009, 2010, and 2011 Pay for Performance reviews;

(6) on August 29, 2011, Ms. Wingate's request to have absences changed to sick leave was denied;

(7) Ms. Wingate had not received an interest payment ordered in a Merit Systems Protection Board ("MSPB") Order in a different case; and

(8) Ms. Wingate's manager issued her a Letter of Debt Determination in the amount of $1,327.32 by a manager.

*See* Desorbo Decl. Ex. B.

On March 26, 2013, the USPS issued a Final Agency Decision that "the evidence does not support a finding that the complainant was subjected to discrimination as alleged." *Id.* Ex. E.

The complainant alleged discriminatory harassment beginning April 13, 2012, based on Race (Black African American), Religion (Baptist), National Origin (American), Sex (Female), Age ([redacted]) and Retaliation (Prior EEO Activity) when:

1. On unspecified dates, her leave requests were denied;

2. On unspecified dates, management invaded her privacy by opening mail addressed to her and sharing information with others;

3. On August 17, 2012, her request for information was denied;

4. On unspecified dates, she was rated incorrectly on her 2011 Pay for Performance reviews;

5. On August 29, 2011, her request to have absences changed to sick leave was not approved and

6. Effective July 3, 2012, she was forced to retire.

*Id.*

### *2. Wingate II in Federal Court*

On April 16, 2013, Ms. Wingate appealed the agency's *Wingate II* decision by filing suit in this court. *See Wingate II*, Complaint, ECF No. 1. In her original complaint, Ms. Wingate alleged discrimination on the basis or race or color, sex, and national origin. The discrimination claims were roughly based on the factual allegations addressed in the *Wingate II* final agency decision. In addition, the complaint and its attachments contained references to numerous other claims including defamation, "hostility and disrespect," invasion of privacy, and extortion. *See id.*

On May 14, 20123 the court related this case to *Wingate I*. ECF No. 3. Then on June 17, 2013, the USPS moved to dismiss this case. *See* ECF No. 9. On July 23, 2013, the court granted the USPS's motion to dismiss for the same reasons discussed in the *Wingate I* order of the same date. *See Wingate II*, Order, ECF No. 13.

Ms. Wingate filed the operative FAC on August 14, 2013. ECF No. 15. As in *Wingate I*, the FAC alleges five Title VII claims for discrimination based on race, national origin, sex, color, and hostile work environment. *See* FAC, ECF No. 15, ¶¶ 25-45. The complaint makes the following factual allegations:

(1) the USPS denied Ms. Wingate's requests for leave on unspecified dates from 2009 to 2012;

(2) Manager Gray invaded Ms. Wingate's privacy by intercepting, opening, delaying, and sharing the contents of Ms. Wingate's mail;

(3) Ms. Wingate's manager signed a form that obligated Ms. Wingate to pay for health and life insurance for the period when she had been on leave without pay;

(4) the USPS denied Ms. Wingate's August 17, 2012 request for information;

(5) Ms. Wingate was incorrectly rated on her 2009-2011 pay for performance reviews;

1  (6) on August 29, 2011, Ms. Wingate's request to have her absences changed to sick leave was denied;

2  (7) the USPS knowingly sent Ms. Wingate's checks to the wrong address;

3  (8) Manager Gray denied Ms. Wingate's request regarding a "corrected form 3972;"

4  (9) Ms. Wingate was docked $2,172.40 to cover "discrepancies" at the Embarcadero station, though such discrepancies were normally ignored; and

5  (10) after Ms. Wingate asked the USPS to roll over one of her IRAs, it failed to do so.

FAC ¶¶ 15-23.

### C. Current Procedural Posture of *Wingate I* and *Wingate II*

On August 28, 2013, the USPS filed the pending motions to dismiss in both cases *See Wingate I*, ECF No. 26; *Wingate II*, ECF No. 16. Ms. Wingate did not oppose either motion by the deadline, so the court ordered her to either oppose the motions by September 23, or show cause why these matters should not be dismissed for failure to prosecute. *See Wingate I*, Order to Show Cause, ECF No. 27; *Wingate II*, Order to Show Cause, ECF No. 17. Ms. Wingate filed a consolidated opposition in both cases on September 23, and the USPS filed a consolidated reply on September 25, 2013.

## ANALYSIS

### I. LEGAL STANDARDS

#### A. Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) permits defendants to move for dismissal of a complaint for lack of subject-matter jurisdiction. Because a plaintiff seeks to invoke federal jurisdiction by filing a complaint in federal court, a plaintiff bears the burden of establishing that jurisdiction. *See, e.g., Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994); *Farmers Ins. Exchange v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911, 912 (9th Cir. 1990). Hence, a plaintiff must plead sufficient facts in the complaint to establish the court's jurisdiction Fed. R. Civ. P. 8(a)(1).

A defendant may mount either a facial or a factual challenge to the court's jurisdiction *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). A facial attack asserts that the lack of federal jurisdiction appears on the face of the complaint. *See Warren v. Fox Family Worldwide, Inc.*, 328

1  F.3d 1136, 1139 (9th Cir. 2003). In this context, a court must "accept all allegations of fact in the
2  complaint as true and construe them in the light most favorable to the plaintiffs." *See id.* In
3  contrast, with a factual challenge, courts do not accept as true all facts in a plaintiff's complaint and
4  may evaluate extrinsic evidence and resolve factual disputes when necessary. *See Roberts v.*
5  *Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987) (quoting *Augustine v. United States*, 704 F.2d
6  1074, 1077 (9th Cir. 1983)). Where a defendant asserts a factual challenge by presenting affidavits
7  or other evidence, the party opposing the motion must present sufficient evidence to support the
8  court's subject-matter jurisdiction. *See Savage v. Glendale Union High School, Dist. No. 205,*
9  *Maricopa County*, 343 F.3d 1036, 1040 n. 2 (9th Cir. 2003). Dismissal of a complaint without leave
10 to amend should be granted only where the jurisdictional defect cannot be cured by amendment.
11 *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

### B. Rule 12(b)(6)

13 Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim
14 for "failure to state a claim upon which relief can be granted." A motion to dismiss under Rule
15 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir.
16 2001). In order to survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim
17 to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A
18 claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw
19 the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*,
20 129 S. Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,'
21 but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting
22 *Twombly*, 550 U.S. at 557). In considering a motion to dismiss, a court must accept all of the
23 plaintiff's allegations as true. *Id.* at 550; *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). The
24 plaintiff's complaint need not contain detailed factual allegations, but it must contain more than a
25 "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. "Threadbare
26 recitals of the elements of a cause of action, supported by mere conclusory statements, do not
27 suffice." *Iqbal*, 129 S. Ct. at 1949. In reviewing a motion to dismiss, courts may also consider
28 documents attached to the complaint. *Parks School of Business, Inc. v. Symington*, 51 F.3d 1480,

1484 (9th Cir. 1995) (citation omitted). Additionally, courts may consider a matter that is properly the subject of judicial notice, such as matters of public record. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

## II. USPS'S MOTION TO DISMISS THE CLAIMS IN *WINGATE I*

### A. Ms. Wingate's Amended Claims Fail

The USPS moves to dismiss Ms. Wingate's Title VII claims for the same two reasons the court granted its previous motion to dismiss. First, it argues that the court should dismiss any discrimination claims that were not part of Ms. Wingate's MSPB complaint for failure to exhaust administrative remedies. *See* Motion, ECF No. 26 at 11-13. Second, to the extent that Ms. Wingate exhausted administrative remedies, her discrimination and hostile work environment claims fail to state claims upon which relief can be granted. *Id.* at 13-14. For both reasons, the court dismisses Ms. Wingate's discrimination claims.

#### *1. Ms. Wingate Has Not Exhausted Her Administrative Remedies*

The USPS argues that the court lacks jurisdiction to hear the Title VII discrimination claims that Ms. Wingate did not raise before the MSPB. *See id.* at 11-13. Ms. Wingate does not respond to this argument. *See* Opp'n, ECF No. 28. The court previously set forth the applicable legal standard and explained that exhaustion of administrative remedies is a jurisdictional prerequisite. *See* Order, ECF No. 23 at 7-9. The same standard applies to the FAC.

Ms. Wingate's EEO complaint did not allege that she was asked to simultaneously cover the manager and supervisor positions, FAC ¶¶ 16-17, that she had to work hours for which she was not compensated, FAC ¶ 18, or that she was improperly reassigned to a relief position, FAC ¶ 28. The court, therefore, lacks jurisdiction to hear claims based on these allegations. Stated differently, the law does not permit Ms. Wingate to raise claims in this court based on allegations that she did not present in her EEO proceeding. Accordingly, to the extent Ms. Wingate's claims are based on the allegations in paragraphs 16-18 and 28 of her complaint, they are dismissed.

#### *2. The FAC Fails to State a Claim For Employment Discrimination*

The USPS also moves to dismiss as insufficiently pleaded Ms. Wingate's employment discrimination claims. Motion at 13-15. Ms. Wingate does not address the USPS's arguments (that

1   the complaint does not include sufficient allegations) and instead her opposition is a narrative of her
2   grievances with various USPS managers. *See* Opp'n, ECF No. 28, *passim*.

3       To establish a prima facie case of employment discrimination under Title VII, Ms. Wingate must
4   prove that (1) she belongs to a protected class, (2) she was qualified for the position, (3) she was
5   subject to an adverse employment action, and (4) similarly-situated individuals outside her protected
6   class were treated more favorably. *See Leong v. Potter*, 347 F.3d 1117, 1124 (9th Cir. 2003) (citing
7   *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).  Though heightened pleading
8   standards are not mandated in Title VII cases, Ms. Wingate must plead sufficient facts to state the
9   elements of a prima facie case of discrimination. *Johnson v. Riverside Healthcare System, LP*, 534
10  F.3d 1116, 1122 (9th Cir. 2008) (citing *Williams v. Boeing Co.*, 517 F.3d 1120, 1130 (9th Cir.
11  2008)).

12      As discussed, the court has jurisdiction only over claims based on the allegations that Ms.
13  Wingate presented to the EEO.  Those allegations are that Ms. Wingate was (1) denied sick leave
14  and forced to take leave without pay, (2) placed in off-duty status without pay for refusing to accept
15  a new job assignment, and (3) removed from the USPS for being absent without leave. *See* MSPB
16  Initial Decision, Tam Decl. Ex. D; MSPB Final Decision, Tam Decl. Ex. E.

17      Here, the FAC fails to allege facts showing that similarly-situated individuals outside Ms.
18  Wingate's protected class were treated more favorably.  The closest allegation is that "[o]n
19  information and belief Plaintiff alleges that persons who are not of her particular persuasions have
20  not received such treatment." FAC ¶ 30.  That is the sole discrimination allegation related to the
21  claims that the court has jurisdiction to consider.[8]  But this vague and conclusory statement is

---

[8] The FAC also alleges that none of other replacement managers were African-American or black and that they were not asked to fill both manager and delivery service supervisor positions at the same time. *See* FAC ¶¶ 16-17.  As discussed, the court lacks jurisdiction to consider that claim.

Ms. Wingate's opposition also contains allegations that specific employees of different races were treated differently than she. *See* Opp'n at 5, 7, 24, 29.  As the court explained when dismissing Ms. Wingate's original complaint, on a motion to dismiss the court considers only the factual allegations in the complaint and not additional allegations in the opposition brief. *See* Order, ECF No. 23 at 4 n.5.  Nonetheless, the factual allegations in Ms. Wingate's opposition would not change

unsupported by factual allegations. Accordingly, the court grants the USPS's motion to dismiss claims one through four in the FAC.

### *3. The FAC Fails to State a Title VII Claim For a Hostile Work Environment*

Next, the USPS moves to dismiss Ms. Wingate's fifth claim for hostile work environment as insufficiently pleaded. Motion at 14. Ms. Wingate's opposition does not address the USPS's argument.

The elements of a Title VII hostile work environment discrimination claim based on race or sex are that the plaintiff (1) was subjected to verbal or physical conduct of a racial or sexual nature; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment. *Vasquez v. County of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003).

Here, the FAC is devoid of allegations as to any of these elements. *See* FAC. Accordingly, the court grants the USPS's motion to dismiss.

## II. USPS'S MOTION TO DISMISS THE CLAIMS IN *WINGATE II*

The court's earlier order addressed almost all of these allegations, and the FAC adds nothing to them. *Compare* Order, ECF No. 13, *with*, FAC, ECF No. 15. To the extent the FAC purports to state Title VII claims for discrimination, harassment, or retaliation, it fails for the same reason the same claims fail in *Wingate I*: there are no allegations linking any adverse employment actions with either a discriminatory or retaliatory motivation. *See* Order, ECF No. 13 at 5. And as in *Wingate I*, the FAC states no allegations to support a Title VII hostile work environment claim. As discussed with regard to *Wingate I*, Ms. Wingate states on information and belief only that "persons who are not of her particular persuasions have not received such treatment." FAC ¶ 23. This conclusory allegation is insufficient to withstand a motion to dismiss. Thus, the court grants the USPS's motion to dismiss all five of the claims specifically alleged in the FAC.

Liberally construed, the FAC appears to reallege additional claims, all of which the court

---

the outcome of this case because Ms. Wingate did not exhaust administrative remedies as to any discrimination claims that could arise out of those allegations.

1    previously dismissed.  First, to the extent the FAC attempts to state tort claims predicated on

2    employment discrimination, they are barred for the reasons previously discussed.  *See id.* at 5.

3    Second, to the extent the complaint alleges other tort claims, they are barred either by sovereign

4    immunity or because Ms. Wingate did not exhaust administrative remedies under the FTCA.

5        Finally, the court previously dismissed claims based on allegations related to a failure to promote

6    Ms. Wingate or the refusal to roll over her IRA because Ms. Wingate failed to exhaust

7    administrative remedies regarding these claims.  *See* Order, ECF No. 13 at 4-5.  The FAC contains

8    no new allegations that would support different conclusions.[9]

## III. LEAVE TO AMEND

10       Finally, the USPS asks the court to dismiss dismiss Ms. Wingate's claims with prejudice (in

11   other words, without leave to amend).  Generally, if the court dismisses the complaint, it "should

12   grant leave to amend even if no request to amend the pleading was made, unless it determines that

13   the pleading could not possibly be cured by the allegation of other facts."  *Lopez v. Smith*, 203 F.3d

14   1122, 1127 (9th Cir. 2000).  But when a party repeatedly fails to cure deficiencies, the court may

15   order dismissal without leave to amend.  *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992)

16   (affirming dismissal with prejudice where district court had instructed *pro se* plaintiff regarding

17   deficiencies in prior order dismissing claim with leave to amend).

18       As in *Ferdik*, this court previously instructed Ms. Wingate regarding the deficiencies in her

19   original complaint and what she must allege to survive a motion to dismiss.  The FAC fails to correct

20   any of these deficiencies.  Accordingly, the court dismisses Ms. Wingate's claims with prejudice

21   (without leave to amend).

## CONCLUSION

23       For the reasons discussed above, the court **GRANTS** the USPS's motions to dismiss and

24   dismisses the First Amended Complaints in Civil Case Nos. 12-05660 LB and 13-01722 LB **WITH**

25   **PREJUDICE**.

---

28       [9] The court's finding is based on the insufficiency of this allegation and does not rely on the USPS's interpretation of the law of the case doctrine.  *See Wingate II*, Motion, ECF No. 16 at 12.

C 12-05560 LB; C 13-01722 LB
(ORDER)                                         13

This disposes of ECF No. 26 in Case No. 12-05660 LB and ECF No. 16 in Case No. 13-01722 LB.

The clerk of court shall close the files.

**IT IS SO ORDERED.**

Dated: September 26, 2013

_____
LAUREL BEELER
United States Magistrate Judge

(ORDER)

14